12-06-12 Wells Fargo Bank v. Alfred Zwolinski The issue before this court is publication of service, and the fact and circumstance of this case, I believe service should be quashed and or remanded, or the case should be remanded for an evidentiary hearing. This court in Public Taxi v. Guyton stated that the least satisfactory method of service or notice is publication, and even in the case itself, it said it often is not even notice at all. 22-06 of the Code of Civil Procedure allows publication of service based on an affidavit which states that after due inquiry, the defendant cannot be found. However, the circuit court adopted Local Rule 7.3, which is adopted by this court in the case of Deutsch Bank v. Brewer, which requires that the plaintiff to use publication of service demonstrate an honest and well-directed effort to ascertain of where the defendant could be served by inquiry as circumstances permit. Prior to quashing service, the defendant, as was done in this case, has a duty and obligation to set forth an affidavit stating that he could have been found on due diligence and where he could have been found. Mr. Reitchak, what about the fact that Wells Fargo did submit an affidavit where they talked about the inquiry that they made in searching the various databases, quite a few of them, and the fact that the process servant, Ms. Garcia, was told by a person purporting to be a tenant at the Rossville Avenue location that Mr. Zielinski did not live there? Your Honor, that affidavit is so unreliable. Why is it any more unreliable than your client's affidavit? It's a third-party affidavit by a person that says, I went to a property, I met somebody there, they told me this person doesn't live here, and then they never went back again. That leads to my first question is, we would see affidavits all the time where properties were being rented out, process server goes there because that's the address that the bank has, and somebody enters the door and says, no, I'm a tenant. We have to set rules here. This is the appellate court. We're not doing this on a case-by-case basis. Are we going to have a rule that says they have to go five times and have the tenant answer five times and say, stop coming back or I'll call the police? I would see returns of service that said, you know, the tenant was so mad at me, the police were called, and I was harassing her. We have to set a rule here. We have an affidavit before us that says the process server was told by the person who entered the door, I am a tenant, I am not Alfred Zielinski, go away. Are they supposed to come back a second time and a third time? Because the property is clearly from the picture. It is absolutely crystal clear that it is a single-family home. And if some other family is living there, it's probably illegal. Tell me what rule we have to set in order for you to win this case. I feel they have to go back more than once. And certainly they went to the wife's property, and they could have asked the wife, where does your husband live? There's no evidence that they even did that. I mean, they say that the tenant went to the – they say the tenant directed them to where the wife lives. And then he said, okay, and we went to the wife's property in Elmwood Park and served terms. But why didn't they at least show that they asked the wife where the husband lives? And the other thing that bothers me, Judge, is every search that they did, which they did, led to this address. Every single search led to this address. There was no other address in any database for the defendant except this address. Not one. And then in addition, under that Brewer case – What about your affidavits? I mean, your first affidavit was conclusory. And then you waited until a motion to reconsider to bring up evidence, which you could have presented, or affidavits that you could have presented initially. But there's nothing attached to the affidavit. No documents, a copy of the driver's license, a copy of the lease. What kind of evidence does the trial court need to have? Well, the case – there's really no case that says anything more than that conclusory statement has to be made. There is no case that says you have to attach an affidavit that says more. But, no, the cases do say that the burden of the defendant to quash service prepublication is to demonstrate that had due diligence been exercised, he would have been found. A one-sentence affidavit, which is all we got from – in this record, saying I'm a resident there, that's totally conclusory and has no facts. It doesn't say I sleep there, I own it, it has three bedrooms and this one is my line and this one is my daughter's. It has nothing that we would normally see for a residency challenge in any other field of law. So that affidavit doesn't get us very far. Cases that I read, including that downstate case, they all just say you have to submit an affidavit that says on the exercise of due diligence, I could have been found and give the address where he could have been found. But the way you do that correctly is to say something like was done, I think, in either Brewer or Cotton. Say I searched the public records myself and this is the address that keeps showing up for me. You never went to, let's say, Oak Park, which is what shows up on my driver's license, on my insurance and all these other public records. And you never, ever went there. Instead, you went to Elmwood Park. That's what I think the case law intends. So how do we, from this record, get to where you want us to go? Well, of course, we did file a motion to reconsider, which did attach a lot more information. Yeah, but you can't do that on a motion to reconsider. Because you're asking the judge to reconsider the original ruling, which is based on the one-sentence affidavit that says I'm a resident, which is not a fact. It's a conclusion of law. Actually, Judge, under the motion to reconsider, there's a new case that just came down, American Charter v. U.S. MDS, third district case, that more or less said you could bring it up in a motion to reconsider. I mean, that case does talk about certain issues about motions to reconsider. But you mean more or less say you can bring it up? No, Justice, the question that I was about to ask you, which is what else could you have attached to that? I was astounded, really, at the brevity of the affidavit. You know, what else could you have attached to make the point stronger that this affidavit really has now shifted the burden to the other side to prove that, yeah, well, we could not have found him there if we had exercised more diligence. I mean, that's the whole thing. You have to have enough in the affidavit for the burden to shift to the opposing party. And a one-sentence conclusory affidavit is difficult to do that. Well, the other thing is, of course, their affidavit, their 7.3 affidavit, is not really in compliance, also because the person that went and made service is different than the person that checked the records. You've got two different people here. And the person that did the 7.3 affidavit states that she relied on the process server's information, which now makes it perfect. If you read those two together, and I know you've made that argument, but the rule doesn't say, it really doesn't say it has to be the same person. The rule doesn't say that. It says you have to, there has to be an affidavit and the person has to swear to it and so on. If you read the two affidavits together, one person who is responsible for doing the checking and that person is the back office person and he or she swears that this is what she did, and then the other person who actually goes out to the location. So there's nothing about those two affidavits that's inconsistent with the rule as far as I can tell. Well, I thought under the Brewer case it said you had to have the person say things on actual knowledge that they actually performed. Well, they did. I mean, the one who performed the search, she gave an affidavit based on her actual knowledge that this is what I did. These are the databases that I searched in looking for Mr. Zulinski. And then the other affidavit was from the one who actually went there and said this is what I did in trying to serve him. I ran into this person who claimed he was a tenant and he said he didn't live there. So each person gave an affidavit based on what they did, and I think that my point is why is those two taken together not sufficient? That's my question. Because one is an affidavit of return of service, not intended under 7.3, and the other one is a 7.3 affidavit which takes place after they're not able to locate the defendant. But the other thing about the 7.3 affidavit is that the woman that made it said that they could not find where Mr. Zulinski lived. They said we don't know where he lived. And every address in the 7.3 affidavit points to the property being foreclosed. What's to prevent a foreclosure defendant who has malicious intent from instructing every member of his or her family to answer the door and continually say we're tenants, we don't know who that person is? You know, you don't like stopping by one time, let's say they do it six times. Where do we go from there? And this is the only address there is, so we, I mean, the presumption I think everyone's entitled to make is the person has fled the jurisdiction. And that happens all the time. They never show up ever again. Your Honor, I would agree. If they went out there six times, I mean, to me, five times. You know, I always look at five. You know, morning, afternoon, evening, Saturday and Sunday. To me, that's the optimal spot. But before we lose time, let me ask you a different question. The other issue we've got here, and this is, you both, we both know this is an unusual case because it's a surplus case. And this is a small, the plaintiff in this case is a small first lender. There's a big second lender, which is Harris. Okay? And then there was a surplus, which almost never happens. And the issue has been raised as to whether or not this case has any legs because you didn't provide notice of appeal to Harris or to the judgment creditor, which is yet someone else that your client allegedly owes money to. And they're not here. They didn't participate in the briefing of the case. And if you win this case, what happens? You know, somebody's going to have to claw back the money from the surplus. So how do we unravel it without them being at the table here today? Your Honor, I thought we did give notice. You know, I guess we didn't put it in the record, but I thought we did. I know for a fact that the third party got notice because they sued us in March on a forcible case. But that was, I mean, I saw that that's in the record. There's an M-1 pleading in the record. But that's not how we have to resolve it, though. It's like saying you sued, I mean, they sued several people, one of them appeals, and Harris actually had an attorney of record in the court below. They weren't defaulted. I agree. I think we also attended the surplus hearing, and at that time we mentioned that we were appealing the case. That's my recollection. And I thought we did serve notice, but I can't. Well, the question that Justice Delord asked is real important. It's kind of the underpinning of the whole thing, and I'm glad he asked the question because I had it on my list here that we got sidetracked. How do we resolve a case when less than all parties and interests have been served? And here we are. If we resolve it, what happens to the interests of the other people who didn't know that this appeal was going forward? Well, I would assume that they would have to come back with the dollars involved and then the other people would get their money back. Don't you have an obligation as the affluent to make sure that all parties and interests are served? They're sitting there with $50,000 that they think is theirs, and they probably already spent it. I thought we did give notice. Well, I mean, you would be in the best position to know since you represent the affluent. But I think that that's really a very seminal question in how this gets resolved. There's nothing in the record that indicates to me that all parties and interests were served. So if you don't know and there's nothing in the record, how do we resolve that? I don't have an answer for it. I'll be honest. I don't know how you resolve it. I mean, I know Harris isn't going broke, and I guess they would have to come back with their money or they would have to come in and argue. I don't know. But we have rules that we have to live by as an appellate court. And the question of whether or not this is appropriately before us, as Justice Szilard put it, whether this case has legs or not, has something to do with the rules by which we resolve cases. And one of those rules require that we need to look at jurisdictional questions and is everybody who should be in the tent in the tent? I don't know if I have an answer. I mean, your assumption is correct that everybody should be in front of the court. But I thought we gave notice. That's all I can say. I thought we did give notice to everybody we were going to appeal it. But I remember at the surplus hearing, I had asked my client, do you want to just take the surplus and be done with it? And he said, no, I want to appeal my surplus. And I know we mentioned that at the surplus hearing to Harris. Well, all of that is kind of beside the point if you're not before the court. Why don't you proceed, Mr. Richard? What is this? Nobody seems to have discussed the standard of review involved here. Well, I mentioned it to NOVO in my brief, and they didn't object to that. What about the motion to reconsider? What's the standard there? You're presenting? Well, that's part of what came out in that new case that came down about the, you know. Yeah, let me ask you about that because I do have that case. And it did indicate that legal issues which are sufficiently presented or could be flushed out, if you will, on a motion to reconsider. But the case does go on to still state that newly discovered. It does also go on to say that it allows a party to present newly discovered evidence. I would have to check to see how that fits in with the rest of the case law. But what is the standard then when you're raising an issue, an evidentiary issue, on a motion to reconsider? Isn't it abuse of discretion? I would think so, yes. But, of course, in this case, because it was a motion to confirm, the briefing schedule didn't allow for us to file a motion to reply. In other words, it was set up as they came in on a motion to confirm, we filed a response, a motion to quash, and then they filed a response. Was it considered their reply like to a motion to confirm? So there wasn't a time in the briefing schedule for us to file anything, which was why I then filed a motion to reconsider. And you know what? I'm sorry. It does say, it is consistent with what I raised earlier. It's newly discovered evidence. What you presented was not newly discovered. Well, it was presented for the first time. It was facts that we'd already known that weren't presented in the motion to reconsider, that weren't presented in the initial affidavit in support of the motion to quash. But it wasn't newly discovered. It could have been presented. It could have been presented, yes. Well, we weren't given an opportunity to file a reply, so I view the motion to reconsider in the form of a reply. Well, it kind of goes back to the fact that you filed an appearance before the motion for the proceedings to confirm the sale. Is that correct? Well, you have to in order to appear in court, so you file the appearance first. But you waited to file the motion to quash until after the motion was scheduled. What I think may have happened is when you were in front of the judge on the confirmation, you didn't say to the judge, I fully intend to file a motion to quash. Instead, he set a briefing schedule on the motion to confirm, and then instead of responding on the motion to confirm, you filed a brand-new motion to quash without noticing it up. That's correct. Is that what you did? That's exactly what I did. That's what happened. I think that's my time, right? Can I reserve a couple minutes of rebuttal? Sure. Thank you. Good morning, Your Honor. Good morning. My name is Ruth Sosniak, and I represent the Appley-Wells Fargo Bank. Not only, Your Honor, are there two parties missing this morning, there are three parties missing this morning. The judgment creditor, Mr. Hagen, who was represented in the trial court below, the bank with the second mortgage, Harris, as you've mentioned before, and the third-party bidders at the judicial sale who, at this point, Your Honors, do believe they own property. But the third-party bidders never intervened into the foreclosure case. They simply paid their money and walked away. Right, and they received their order of approving sale, so there was no reason for them to intervene. They then filed their eviction after this action had been filed. The appeal was filed in February, and the eviction action, I'm not sure of the date of filing, but Mr. Reichert's motion to dismiss the eviction was filed in April. And his motion is attached as an appendix to our brief and does not address the fact to inform them or the trial court that there is an appeal pending. It just addresses the issues with the unknown owners. Therefore, under Rule 303C, which requires that service not only be on all parties in the underlying matter, but any other party entitled by law to notice, I would argue that the interests of the third-party bidder are particularly at issue here, where if this court chose not to remand but to unwind, they would now be in the situation where the parties who got the surplus, even though the normal standard would be to make the third-party bidder whole, restore the $106,000 they paid for the property, there is some case law that would perhaps trigger a caveat emptor standard, and the judgment creditors who are not before you have lost the opportunity to argue that they are entitled to keep the money and that we cannot unwind this and make the bidder whole. Therefore, I think that it is proper as the standard for a dismissal with failure to provide notice under 303 is prejudice to the parties. I think the prejudice in this case is clear. Obviously, I can't argue the defendant's positions, but without guessing what they would be, there are definitely problems in what Mr. Rychek proposes, that there would be a direct clawback order. The single judgment creditor who does not necessarily have the resources of Harris Bank has to turn over money that, as Justice DeLorte pointed out, might already be spent, and we cannot unwind this deal and create the status quo entity. Therefore, I do think that this court should dismiss the appeal on the grounds that there was no proper notice. Failure to notify is not a meaningless procedure of death, and there are three parties whose interest is directly impacted by this court's decision. Let me jump to the service issue. Yes. Okay. And I asked Mr. Rychek the question about what standard are we going to have to adopt here. Not a standard of review, but do we have to go out more than once if the person enters the door and says, I'm a tenant. I mean, there may be a basement apartment, there may be a coach house, who knows how the circumstances could all lay out, and he's sort of making that argument. Your Honor, I honestly don't think there can be a bright line standard. These are all very fact-specific cases, and there should be a recognition that the process servers and investigators are qualified people who have experience, and that where they deem it's a waste of resources to go back, they should have some flexibility. Well, waste of resources is a relative term, because this, whatever it is, the 2009 case is now here in 2013. If you would have sent the same server out a few more times and at least larded up this record with a few more affidavits, obviously we'd avoid this issue, because this is one case, but I used to see this all the time. Every motion to quash that came in on publication was some variation of this theme. And it's exactly that problem that I think makes it a fact-specific situation. In the Matthews case, the district court looked at the totality of the first exam, the only trip out there, and I would argue that the fact that they spoke to a tenant in what was... Okay, let me, I agree with you that this, these situations are fact-specific. But the process server didn't know this person, and it doesn't say in the record where she met him, whether he was standing on the sidewalk in front of the place, whether he answered, he didn't, there was nothing in there that indicated that he answered the door. She met this person who said he's a tenant. There was nothing to indicate, have you lived here for a week, a month, how, I mean, I am asking, since it is fact-specific under the facts of this case, since the other researcher, Ms. Hagen or whatever her name was, did a search, and all of the databases kept coming back to this address, there was no other address listed anywhere for Mr. Zolinski, was it diligent to accept the word of a person that she's never seen before, she doesn't know whether he's a tenant or not, and never go back to that address? Absolutely, Your Honor. And why? Because the tenant in the affidavit for the spouse... How does she know he's a tenant? That's exactly what... Other than what he said, I live here, and... He said, I pay my rent to Beata Zolinski. She lives in Elmwood Park. They then did a record search for the spouse. I read that, and they found Beata, and they went and they served her, but to Mr. Rychek's point, when they went to serve Beata, did they say, does Alfred live here, and if he doesn't, where does he live? There's nothing to indicate that he... If what you say is true, that Alfred didn't live at the Roscoe Street address, and all of the databases pointed to Roscoe Street, when you went to Beata, wouldn't it have been diligent to say, now where does Alfred live? That would have been preferable, Your Honor, and if it was asked and not recorded, that... We can only deal with what's in the affidavit, and there's nothing in the record that suggests that anybody asked the wife where her husband lives, since everything showed the Roscoe Street address. And that, Your Honor, would be why the Brewer case and the Cotton case provide for remand for evidentiary hearing on the affidavits if necessary. However, I think that the strength of the affidavits and the fact that... Is there anything else that the affidavit of Ms. Garcia, who was the actual process server that went out, could have asked the tenant and put in that affidavit that would give more comfort that this, A, was a tenant, B, had some credibility, had lived there longer than a day, or whatever it was. I mean, there's nothing to indicate anything, or even if this guy was a tenant or where she met him. Was he outside? Was he walking down the street close to the building? I mean, you know, it's hard to know. All of that could have been in the affidavit. I agree it isn't. But it's not the process server's duty to vet out on truths and they went the next step to prove their liability. No, but it is your responsibility to provide an affidavit that's sufficient. And sufficiency has to do with whatever the process server may have done and then came back and told you. So I agree that it's not the process server's job, but you still have to provide a sufficient affidavit, and that's what I'm asking you about. And I think under 7.3 this was an honest and well-directed effort to ascertain the whereabouts. They went, they obtained information, they verified the additional information that they got. Which is what? What was that? The location of the wife and the proof that the person indicated that there was this other person. This person said that they had never heard of Mr. Zielinski, that they don't know anybody by that name at this address. At what point would you, if you go back,  and disprove this person? I think that there's a fair basis for the fact that, if you look at the field inspection record, which was presented with the response to the briefing. But Ms. Stosny, the only address that you had for Mr. Zielinski was the Roscoe Street address. I think the affidavit of your extensive database search kind of confirms it, that there was nowhere else. So would it have been so onerous to go back there another time, as your attorney suggests? I would concede that it's not so onerous, but I don't think that this test from Brewer and from Cotton, the test is whether the veracity of the affidavit leads to questions. And there's nothing that counters the veracity of the affidavit in anything that Mr. Reitschek's client raised. Mr. Zielinski says, I've lived here since 1991. Well, he also says he rented the place out. But your search confirms that, that he's lived there since 1991, because that's the only address that your record search ever came up with for him. So your search confirms part of what he says in his affidavit. Yes, but he also acknowledges that he rented part of the building out. There were not two mailboxes like there were in Cotton. In fact, there was no name on the mailbox. There was nothing to indicate that anyone else, except the person who said, I have never heard of this person, lived at that property. The record search showed a Social Security number. It didn't show a place of employment. It didn't show anything in addition that would provide another address, another place to go, another place to look. And that sort of leads to a question just about these searches in general. You know, in your experience basically as a collection law firm, do you have people with records like this who end up, you know, what's the real answer? Is it because they fled to or went back to a different country or they have tried to make no paper trail of where they live? Some people have stood on their porch and said, I don't live there, and it is the defendant himself avoiding service. Sometimes they have gone to live with a relative. They've never updated their Social Security number. They don't tell the bank that they're at a new address.  provided at closing unless that information is updated. As in city mortgage versus cotton, there were questions as to whether or not you could serve a person at their place of employment without violating the FDCPA. That's now been resolved. But the fact is that it is very easy to have a record where I have a case right now, Your Honor, where someone no longer lives at the property they rented out, but they continue to have their mail sent there. In that case, they did appear in court. They did collect their mail at their prior address, but no record would show that they no longer are there. So as diligent as the process servers are in seeking out other information, there has to be a balance between what they view in reality when they go to a property and what the databases show. But I think because publication is such a drastic means of service, and I don't think anybody is deluded into thinking that publication, for the most part, really gives notice to actual or even constructive notice. That's the reason that diligence is required. And the question is, what is diligence? And of course, as you point out, it's case specific. And in this case, according to your opponents, there was no other address. Nobody ever said he lived anywhere else. Your own search confirmed that. Talking to an unidentified tenant who said, he doesn't live here, I don't know him. Was that diligence? Is that enough? I mean, that's the question. Coupled with, underpinned by the other question, which is why they didn't serve all the parties in interest. So, I mean, this is a procedurally complicated case. And I think unnecessarily so by the actions of the parties. And in addition, Your Honor, I mean, if, as Mr. Zielinski's counsel contends, all it takes to do is stand up and say, I could have been found, then that vitiates 206 completely. Because you can't account for anything except constant process, constant attempts, sitting outside the gate and waiting to see if someone other than a person encountered by the process server shows up at the property. There has to be some accounting for the fact that publication is considered a form of service, has been historically, and is... It's a last resort, Ms. Sosnack. It's not the first or the second thing you do. So I think while you're arguing that we agree that publication is a form of service, but it's not the first thing or the second thing. And I would argue it wasn't the first or the second thing here. The first was an attempt at the property. The second was following up on the information provided to the process server. And then a decision as to whether or not it was realistic to go back to the property. And was it not realistic to go back to the property? I would concede that that probably should have happened, but it is not sufficient to say that publication wasn't merited here. There was sufficient information. Perfection is not required. They made a diligent inquiry. They made due inquiry, which is the standard... Perhaps if you had gone back to the property, we wouldn't be here, right? Perhaps. And perhaps the same thing would have happened. Someone who, other than Mr. Zwolinski, would have met the process server. We don't know that because you never gave that opportunity. Can you wrap up your remarks, please? Your Honor, I do believe that in the case of publication, it was justified. Ms. Garcia made a diligent effort to locate Mr. Zwolinski. His response is not satisfactory. And all of the affidavits were properly presented. 7.3 was correct. Brewer does not require the same person. And I would suggest that the trial court's findings should be upheld. And if necessary, this be remanded for an evidentiary hearing where all of the parties would have notice and be available to the court. Thank you. Mr. Reichek, brief rebuttal, please. Emphasis on brief. Your Honor, I would like to point out in this case that the reliance on the wife, if you look at the record of the case, you'll see that the wife signed the mortgage as an unvested spouse. So I don't know that she even had any interest in the property at all. And, you know, the idea that they went to the wife is if the wife was something, somehow she's, I mean, I never saw language like that before ever. I assume it meant, you know, waiving homestead, that she didn't have an interest in the title and she's waiving her right of homestead, I think. But in this case, they used the term unvested spouse, which I have no idea what it means. Second of all, if you notice in the record, Mr. Zwolinski uses more than one name. Alfred, Fred, I think there's like three or four names. And you can't even, nobody can, I agree that the last name wouldn't change, but could have said maybe he knows him as Fred, maybe he doesn't know the last name. We don't know what name she asked, and there are more than one name listed in the record of the case. Well, the affidavit of the skip tracer lists three different variations of his name. Right. So what I'm saying is when the person that went to serve said, do you know this person, we don't know what name, they might know him as Fred or Al, you know what I mean? So we can't be sure when they ask what name, what the person is responding to. We don't know what name, because there's three different names. But does that make a difference? Because through the process server, we still know that the person who entered the door said, he doesn't, basically no one else lives here except me. Well, I didn't get that. Maybe I read that. I thought he just said, I don't know who this person is, and I paid the rent. You never heard of Alfred, okay. So the wife, who's, as I said, the unvested spouse. Okay, I have nothing further. Okay. Unless you have anything. No, we have no further questions. Thank you very much. Thank you both. This case will be taken under advisement. Court is adjourned.